UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MELISSA L.,

               Plaintiff,

      v.

COMMISSIONER OF SOCIAL SECURITY,

              Defendant.
_____

**DECISION AND ORDER**

6:20-CV-06667 EAW

# INTRODUCTION

Represented by counsel, plaintiff Melissa L. ("Plaintiff") brings this action pursuant to Title II of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying her application for disability insurance benefits ("DIB"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g).

Presently before the Court are the parties' cross motions for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) (Dkt. 14; Dkt. 16) and Plaintiff's reply (Dkt. 17). For the reasons discussed below, the Commissioner's motion (Dkt. 16) is granted and Plaintiff's motion (Dkt. 14) is denied.

## BACKGROUND

Plaintiff protectively filed her application for DIB on December 21, 2017. (Dkt. 13 at 18, 64).[1] In her application, Plaintiff alleged disability beginning November 24, 2016. (*Id.* at 18, 149). Plaintiff's application was initially denied on March 22, 2018. (*Id.* at 18, 75-80). At Plaintiff's request, a hearing was held before administrative law judge ("ALJ") Theodore Kim on August 5, 2019. (*Id.* at 39-63, 81-82). On September 16, 2019, the ALJ issued an unfavorable decision. (*Id.* at 15-37). Plaintiff requested Appeals Council review; her request was denied on July 6, 2020, making the ALJ's determination the Commissioner's final decision. (*Id.* at 4-9). This action followed.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009)

---

[1]   When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

(quotation omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II.  Disability Determination

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically

equals the criteria of a Listing and meets the durational requirement (*id*. § 404.1509), the claimant is disabled.  If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments.  *See id*. § 404.1520(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work.  *Id*. § 404.1520(f).  If the claimant can perform such requirements, then he or she is not disabled.  If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled.  *Id*. § 404.1520(g).  To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience.  *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

**I.      The ALJ's Decision**

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. § 404.1520.  Initially, the ALJ determined that Plaintiff met the insured status requirements of the Act through December 31, 2019.  (Dkt. 13 at 20).  At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity since November 24, 2016, the alleged onset date.  (*Id.*).

At step two, the ALJ found that Plaintiff suffered from the severe impairments of: "degenerative disc disease of the lumbar spine with spondylosis and radiculopathy; right knee chondromalacia and osteoarthritis; obesity; asthma; and articular cartilage disorder right hand with surgery." (*Id.*). The ALJ also found that Plaintiff suffered from the non-severe impairments of osteoarthritis, lower leg arthralgia, anemia, headaches, and major depressive disorder. (*Id.* at 21-22).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id.* at 22-23). In particular, the ALJ considered the requirements of Listings 1.02, 1.04, and 3.03, as well as the effect of Plaintiff's obesity pursuant to Social Security Ruling 19-2p, in reaching his conclusion. (*Id*. at 23).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b), with the following additional limitations:

> [Plaintiff] can frequently operate hand controls, reach, push, pull, handle, finger, and feel with the right dominant upper extremity. [Plaintiff] can occasionally push or pull or operate foot controls with both lower extremities. [Plaintiff] can never climb ladders, ropes and scaffolds, and can never be exposed to unprotected heights and moving mechanical parts. [Plaintiff] can have occasional exposure to dust, mists, gases, noxious odors, fumes, pulmonary irritants, and poor ventilation. [Plaintiff] can tolerate occasional exposure to vibration.  In addition, [Plaintiff] is able to understand, carry-out, and remember simple instructions, and make simple work related decisions.

(*Id.* at 24). At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. (*Id.* at 31).

At step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of sales attendant, cafeteria attendant, and electronics work. (*Id.* at 32). Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act. (*Id.* at 33).

II. **The Commissioner's Determination is Supported by Substantial Evidence and Free from Reversible Error**

Plaintiff asks the Court to reverse the Commissioner's decision and remand for further proceedings, arguing that: (1) the ALJ failed to properly assess the opinion of treating physician Dr. Clifford J. Ameduri; and (2) the ALJ erred in finding the opinion of consultative examiner Dr. Deneen Todd persuasive but failing to incorporate all the mental limitations identified therein in his RFC finding. (Dkt. 15). The Court is not persuaded by these arguments, for the reasons discussed below.

A. **Evaluation of Dr. Ameduri's Opinion**

In deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). The Commissioner's regulations relating to the evaluation of medical evidence were amended for disability claims filed after March 27, 2017. *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01, at *5844 (Jan. 18, 2017). Because Plaintiff's claim was filed on December 21, 2017, the new regulations, codified at 20 C.F.R. § 404.1520c, apply.

Pursuant to the new regulations, the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a). Further, when a medical source provides one or more medical opinions, the Commissioner will consider those medical opinions from that medical source together using the factors listed in paragraphs (c)(1) through (c)(5) of the applicable sections. *Id*. Those factors include: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treatment relationship, the frequency of examinations, purpose and extent of the treatment relationship, and the examining relationship; (4) specialization; and (5) any other factors that "tend to support or contradict a medical opinion or prior administrative medical finding." *Id*. at § 404.1520c(c).

When evaluating the persuasiveness of a medical opinion, the most important factors are supportability and consistency. *Id*. at § 404.1520c(a). With respect to "supportability," the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id*. at § 404.1520c(c)(1). With respect to "consistency," the new regulations prove that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more

persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* at § 404.1520c(c)(2).

The ALJ must articulate his consideration of the medical opinion evidence, including how persuasive he finds the medical opinions in the case record. *Id.* at § 404.1520c(b). "Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning 'weight' to a medical opinion, the ALJ must still articulate how [he or she] considered the medical opinions and how persuasive [he or she] find[s] all of the medical opinions." *Andrew G. v. Comm'r of Soc. Sec.*, No. 3:19-CV-0942 (ML), 2020 WL 5848776, at *5 (N.D.N.Y. Oct. 1, 2020) (quotations and citation omitted). Specifically, the ALJ must explain how he considered the "supportability" and "consistency" factors for a medical source's opinion. 20 C.F.R. § 404.1520c(b)(2). The ALJ may—but is not required to—explain how she considered the remaining factors. *Id*.

Here, the ALJ found Dr. Ameduri's opinion unpersuasive and inconsistent with the medical evidence of record. (Dkt. 13 at 29). The ALJ particularly explained that Dr. Ameduri's opinion was issued in July of 2016, prior to the alleged onset date, and that it consisted solely of "checkbox form ratings of disability with no evidence provided in support." (*Id.*).

Plaintiff argues that the ALJ should not have discounted Dr. Ameduri's opinion based on timing, contending that her "condition did not improve following this opinion." (Dkt. 15 at 21). However, this contention is not supported by the record. As Plaintiff acknowledges (*see id.* at 18), in July of 2016, she had recently been involved in a motor

vehicle accident in which she sustained injuries to her lower back and increased right knee pain (*see* Dkt. 13 at 263-4). Plaintiff's medical records indicate that her treatment for those injuries, which included chiropractic visits, spine injections, and physical therapy, did result in improvements. (*See id*. at 273 (in November of 2016, Plaintiff was experiencing "good results" from chiropractic treatment), 286 (in December of 2016, Plaintiff reported "relief lasting the rest of the day and sometimes several days at a time following chiropractic treatments"), 288 (in January of 2017, Plaintiff was getting chiropractic treatment consistently "which helps quite a bit" as well as taking Norflex which also "helps quite a bit"), 298 (in March of 2017, Plaintiff reported relief from injections and from chiropractic treatment), 306 (in May of 2017, Plaintiff's lower back pain was "managed fairly well with the lumbar blocks")). The Court cannot find, on this record, that it was error for the ALJ to consider the timing of Dr. Ameduri's opinion in assessing consistency and supportability.

The Court further finds no error in the ALJ's observation that Dr. Amerduri's opinion was unaccompanied by any meaningful explanation. Plaintiff argues that it is "disturbing for an ALJ to discount relevant medical opinions of a treating doctor simply because they were not expressed in 'narrative form' and instead were obtained by allowing the physician to choose from a list of various exertional limitations." (Dkt. 15 at 21-22). However, as noted above, the applicable regulations expressly provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical

finding(s) will be." 20 C.F.R. § 404.1520c(c)(1) (emphasis added). The Court accordingly cannot fault the ALJ for considering Dr. Ameduri's failure to provide any meaningful supporting explanations for his opinions. *See Halloran v. Barnhart*, 362 F.3d 28, 31 n.2 (2d Cir. 2004) (a standardized form without accompanying explanation is "only marginally useful for purposes of creating a meaningful and reviewable factual record").

Nor is the Court persuaded by Plaintiff's unelaborated suggestion that the ALJ should have contacted Dr. Ameduri for further information. (*See* Dkt. 15 at 22 ("[I]f the ALJ felt the form lacked sufficient 'narrative,' he could have contacted Dr. Ameduri and requested additional information.")). "[W]here there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information. . . ." *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999) (internal quotation marks and citation omitted); *see also Reithel v. Comm'r of Soc. Sec.*, 330 F. Supp. 3d 904, 912 (W.D.N.Y. 2018) ("[T]he ALJ need only re-contact sources or obtain additional information where there is a conflict or ambiguity that must be resolved but that cannot be resolved based on the evidence present in the record."). Here, the ALJ had ample information on which to base his findings—including the 2018 opinions of consultative medical examiner Dr. Trevor Litchmore, state agency medical examiner Dr. S. Ghandi, and treating physician Dr. Michael Yip—and there is no basis to conclude that he was required to recontact Dr. Ameduri.

Further, contrary to Plaintiff's suggestion (*see* Dkt. 17 at 2-3), the ALJ was not required to restate his prior analysis of the medical evidence of record when discussing Dr. Ameduri's opinion. The applicable regulations do not require the ALJ to format his

opinion in any particular fashion, and "[a]n ALJ need not recite every piece of evidence that contributed to the decision, so long as the record permits [the Court] to glean the rationale of an ALJ's decision." *Cichocki v. Astrue*, 729 F.3d 172, 178 n.3 (2d Cir. 2013) (quotation omitted). Here, the ALJ explained at length the basis for his conclusion that Plaintiff's limitations were less severe than those identified by Dr. Ameduri, including a thorough analysis of her medical records. (*See* Dkt. 13 at 26-27). As the ALJ ultimately explained, "despite continuous reports of knee and back pain causing some diminished range of motion, [Plaintiff] generally had full strength and negative straight leg raise tests in exams, as well as noted improvement from treatment and a normal or only slightly antalgic right gait." (*Id*. at 29). It is thus apparent from the decision as a whole why the ALJ found Dr. Ameduri's opinion lacking in consistency.

Finally, Plaintiff's assertion that the ALJ improperly credited Dr. Litchmore's opinion over Dr. Ameduri's opinion (*see* Dkt. 15 at 19-20) lacks merit. Plaintiff essentially invites the Court to reweigh the evidence and conclude that Dr. Ameduri, as a treating physician, was entitled to more credence than Dr. Litchmore. That is not the function of this Court. An ALJ is free to rely on the opinion of a consultative examiner where he finds it more persuasive than the opinion of a treating physician. *See Michael H. v. Saul*, No. 19-CV-6673F, 2021 WL 288793, at *6 (W.D.N.Y. Jan. 28, 2021) ("[T]he ALJ is permitted to rely on the opinion of a consultative examiner provided the opinion is supported by and consistent with other evidence in the record[.]"). Here, the ALJ appropriately explained his conclusion that Dr. Litchmore's opinion was consistent with the medical evidence of record (*see* Dkt. 13 at 29) and the Court has no basis to disturb that conclusion. *See Bonet*

*ex rel. T.B. v. Colvin*, 523 F. App'x 58, 58-59 (2d Cir. 2013) (applying the "very deferential [substantial evidence] standard of review, . . . once an ALJ finds facts, [the Court can reject those facts only if a reasonable factfinder would have to conclude otherwise") (quotations omitted)).

In sum, the Court finds no reversible error in the ALJ's consideration of Dr. Ameduri's opinion. Remand is not warranted on this basis.

### B. Incorporation of Dr. Todd's Opinion

Plaintiff also argues that the ALJ failed to incorporate into his RFC finding all the mental limitations identified by Dr. Todd, despite finding that her opinion was persuasive and consistent with the medical evidence of record. (Dkt. 15 at 24). This argument lacks merit. Dr. Todd found that Plaintiff had moderate limitations in understanding, remembering, or applying complex directions and instructions, in sustaining concentration and performing a task at a consistent pace, in sustaining an ordinary routine and regular attendance at work, and in regulating emotions, controlling behavior and maintaining well-being. (Dkt. 13 at 319). Dr. Todd ultimately concluded that Plaintiff's psychiatric impairments were not "significant enough to interfere with [Plaintiff's] ability to function on a daily basis." (*Id.*).

Having considered Dr. Todd's opinion, as well as the opinions of state agency psychological consultant Dr. T. Inman-Dundon (who opined that Plaintiff had non-severe mental impairments and no more than mild impairments in adapting and managing oneself) and treating source Dr. Stephanie Beneski-Barlow (who opined that Plaintiff had no significant limitations due to her mental impairments), the ALJ ultimately found that

Plaintiff was limited to understanding, carrying out, and remembering simple instructions, and that she could make only simple work-related decisions. (Dkt. 13 at 24).

Plaintiff contends that the ALJ's mental RFC finding does not address Dr. Todd's finding of moderate limitations in "sustaining an ordinary routine, attendance at work, regulating emotions, controlling behavior and maintaining well-being." (Dkt. 17 at 4). However, numerous courts in this Circuit have found that moderate limitations in areas such as "maintaining attention and concentration, maintaining regular attendance, performing tasks independently, performing low stress and simple tasks, and/or responding appropriately to changes in a routine work setting" are appropriately accommodated by a limitation to unskilled work. *Hillman v. Comm'r of Soc. Sec.*, No. 17-CV-6825L, 2019 WL 2409661, at *2 (W.D.N.Y. June 7, 2019) (collecting cases); *see also Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) ("None of the clinicians who examined [the plaintiff] indicated that she had anything more than moderate limitations in her work-related functioning, and most reported less severe limitations. Although there was some conflicting medical evidence, the ALJ's determination that Petitioner could perform . . . unskilled work was well supported."); *Cory W. v. Comm'r of Soc. Sec.*, No. 1:20-CV-1424-DB, 2021 WL 5109663, at *7 (W.D.N.Y. Nov. 3, 2021) ("[L]imitations to simple, unskilled work account for moderate and even marked limitations in an ability to deal with stress."); *Landers v. Colvin*, No. 14-CV-1090, 2016 WL 1211283, at *4 (WDNY March 29, 2016) ("The determination that plaintiff is limited to simple, repetitive and routine tasks accounts for plaintiff's limitations as to maintaining attention and concentration, performing activities within a schedule and maintaining regular attendance." (internal

quotation marks omitted)).

Plaintiff has failed to demonstrate that the ALJ's RFC finding was inconsistent with Dr. Todd's opinion. It was ultimately Plaintiff's burden to prove a more restrictive RFC than the RFC assessed by the ALJ. *See Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018). The ALJ reasonably concluded that Plaintiff failed to meet his burden in this case. Accordingly, there is no basis for the Court to disturb the Commissioner's determination.

## CONCLUSION

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 16) is granted, and Plaintiff's motion for judgment on the pleadings (Dkt. 14) is denied. The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:      February 28, 2022
            Rochester, New York